IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br>    Plaintiff,<br>v.<br>JOE'S JEANS INC.,<br>    Defendant. | Case No. 21-cv-00597-CRB<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |

Plaintiff Brian Whitaker, a quadriplegic who uses a wheelchair, Compl. (Dkt. 1) ¶ 1, brought suit against Defendant Joe's Jeans Inc. ("Joe's Jeans") for failure to provide an accessible sales counter at its store ("Joe's Store") in Livermore, California, in violation of both the federal Americans with Disabilities Act ("ADA") and the California Unruh Civil Rights Act ("Unruh Act"). Id. ¶¶ 22–32. Whitaker now seeks a default judgment. Mot. for Default Judgment (Dkt. 12). The Court found this matter suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b), vacated the hearing, see Clerk's Notice (Dkt. 14), and now grants the motion, as explained below. The Court further awards $4,000 in damages, along with $2,087.50 in attorneys' fees and costs, and grants an injunction requiring Joe's Jeans to provide an ADA-compliant sales counter.

**I.  BACKGROUND**

In October 2020, Brian Whitaker attempted to access the point-of-sale equipment at Joe's Store. Compl. ¶¶ 8–10. Although there was a lower counter adjacent to the counter with the point-of-sale equipment, the point-of-sale equipment was fixed in place on the higher, non-ADA-compliant counter. Id. ¶ 12. Whitaker required assistance from the

sales representative to access the point-of-sale equipment and alleges that he was deterred from visiting Joe's Store in the future due to the inaccessible sales counter. Id. ¶¶ 12, 20. Whitaker brought suit under the ADA and Unruh Act for failure to provide an ADA-compliant sales counter. Id. ¶¶ 22–32.

Whitaker filed his complaint on January 26, 2021. See id. When Joe's Jeans failed to answer the complaint, Whitaker sought and received entry of default from the Clerk on March 5, 2021. Mot. for Entry of Default (Dkt. 10); Clerk's Entry of Default (Dkt. 11). Whitaker now seeks a default judgment against Joe's Jeans, a "$4,000.00 damages judgment . . . and $2,757.50 as attorney's fees and costs," and "an order directing the defendant to provide [a] wheelchair accessible sales counter" at Joe's Store. Mot. for Default Judgment at 2.

## II. LEGAL STANDARD

Whether to grant a motion for default judgment is within the discretion of the trial court. See Lau Ah Yew v. Dulles, 236 F.2d 415, 416 (9th Cir. 1956). Upon an entry of default by the Clerk, the factual allegations of the plaintiff's complaint will be taken as true, except those relating to the amount of damages. See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008).

In determining whether to enter a default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties," In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999), including whether notice has been adequately given. See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987), superseded by statute on other grounds; Fed. R. Civ. P. 55(a); accord Dytch v. Bermudez, No. 17-cv-02714-EMC, 2018 WL 2230945, at *2 (N.D. Cal. May 16, 2018), reconsideration denied, 2018 WL 3643702 (N.D. Cal. Aug. 1, 2018).

To determine whether default judgment is appropriate, this Court examines the "Eitel factors," which are as follows: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material

2

facts; (6) whether the default was due to excusable neglect; and (7) the likelihood of obtaining a decision on the merits. Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

**III. DISCUSSION**

To analyze this motion for default judgment, the Court must determine whether (A) it has jurisdiction, (B) Whitaker gave Joe's Jeans adequate notice, (C) the Eitel factors support default judgment, and (D) the remedy Whitaker seeks is appropriate.

**A.  Jurisdiction**

The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331, as the Complaint alleges violation of a federal statute, the ADA, and the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the pendant state law claim. See Compl. ¶¶ 5–6; 28 U.S.C § 1331; 28 U.S.C. § 1367.

The Court also has personal jurisdiction over Joe's Jeans. A federal court may exercise general jurisdiction over a defendant only if the defendant is "essentially at home" in the forum state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Thus, general jurisdiction depends on the defendant's relationship with the forum state—for companies, whether the defendant is incorporated, headquartered, or (in exceptional cases) otherwise "at home" there. Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021). Joe's Jeans' corporate headquarters are in California, making Joe's Jeans subject to personal jurisdiction in the state. See id. at 1024; Public Records (Dkt. 12-7) at 3. Venue is also proper under 28 U.S.C. § 1391, because the event giving rise to the claim occurred in the Northern District of California. See Compl. ¶ 7; 28 U.S.C. § 1391.

**B.  Notice**

Service of process under Rule 4 of the Federal Rules of Civil Procedure and California law was sufficient in this case. See Fed. R. Civ. P. 4(h); Cal. Code Civ. P. § 416.10. Under federal law, a corporation may be served in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of

general jurisdiction in the state where the district court is located or where service is made," or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statue and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B), (4)(e)(1). California law allows for personal service and service by mail, in addition to various methods of substitute service. See Cal. Code Civ. P. 415.10, 415.20, 415.30, 416.10. Here, a process server personally served an agent authorized to receive service of process for Joe's Jeans in Albany, New York, on February 2, 2021. Proof of Service of Summons (Dkt. 8). Thus, service of process was sufficient under both federal and state law.

### C. Eitel Factors

To determine whether default judgment is appropriate, this Court examines the "Eitel factors." Eitel, 782 F.2d 1471–72. In this case, the Eitel factors weigh in favor of granting default judgment.

#### 1. Prejudice to Plaintiff

Absent a default judgment, Whitaker will not be able to recover for the alleged ADA and Unruh Act violations. Thus, the first Eitel factor weighs in favor of granting default judgment here. See, e.g., Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners, No. 14-cv-00848, 2014 WL 5281039, at *6 (N.D. Cal. Jan. 21, 2014) ("Denying a plaintiff means of recourse is by itself sufficient to meet the burden posed by this factor.") (citations omitted).

#### 2. Merits of Substantive Claims and Sufficiency of the Complaint

The second and third Eitel factors also weigh in favor of granting default judgment. In assessing the merits of the substantive claims pled and the general sufficiency of the complaint, courts evaluate whether the complaint states a claim that adequately supports the relief sought. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). To prevail on an ADA claim, a plaintiff must show that: (1) he is disabled, (2) the defendant's facility

is a place of "public accommodation," and (3) the defendant denied the plaintiff public accommodations because of the plaintiff's disability. See 42 U.S.C. § 12102; 42 U.S.C. § 12182(a). This denial of public accommodations can take the form of architectural barriers when removal of such barriers is "readily achievable." See 42 U.S.C. § 12182(b)(2)(A)(iv). A violation of the ADA is also a violation of the Unruh Act. Cal. Civ. Code § 51(f).

The first and second prongs of the ADA claim are easily met here. Whitaker's quadriplegia is a disability under the ADA because it is a physical impairment that substantially limits major life activities, such as walking. See 42 U.S.C. § 12102. And Joe's Store is a clothing store, which qualifies as a place of public accommodation under the ADA. See 42 U.S.C. § 12181(7)(E).

As to the third prong, although the ADA Standards for Accessible Design do not specifically counsel on the accessibility of point-of-sale equipment, the standards require that "sales counters" comply with ADA guidelines. ADA Standards for Accessible Design § 904.4 (2010). The standards also require that each different type of counter within one store be accessible: "[A]t least one of each type of sales counter and service counter shall comply [with ADA standards]." Id. § 227.3. Here the counter with the point-of-sale equipment is clearly a "sales counter." The presence of the lower, accessible counter does not bring Joe's Store into compliance, because it is a different type of counter and, absent point-of-sale equipment, cannot be used as a "sales counter." In this case, Whitaker was denied access to the goods and services at Joe's Store due to his disability because the sales counter was not wheelchair accessible as required by the ADA. Whitaker Decl. (Dkt. 12-4) ¶ 5. Because it would be relatively easy to install additional point-of-sale equipment on the lower counter, or make the existing equipment movable, the removal of this architectural barrier is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). As such, the second and third factors of the Eitel test weigh in favor of granting default judgment to Whitaker. See Eitel, 782 F.2d at 1471–72.

### 3. Sum of Money at Stake

As to the fourth factor, if the sum of money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. See Eitel, 782 F.2d at 1472 (finding that a three-million-dollar judgment weighed against default judgment). The sum of money at stake here is small, weighing in favor of granting default judgment. Whitaker seeks $6,757.50 in damages, of which $4,000 is the minimum statutory damages award under the Unruh Act. See Cal. Civ. Code § 52(a).

### 4. Dispute Concerning Material Facts, Excusable Neglect, & Likelihood of Obtaining a Decision on the Merits

The remaining factors also weigh in favor of granting default judgment. There is no possibility of a dispute concerning material facts, because upon an entry of default by the Clerk, the factual allegations of the plaintiff's complaint will be taken as true. See Derek Andrew, Inc., 528 F.3d at 702. Whitaker served Joe's Jeans with the Complaint, Motion for Entry of Default Judgment, and Motion for Default Judgment, but it has remained unresponsive. Memo. of P. & A. (Dkt. 12-1) at 17–18. Thus, the default is not likely due to excusable neglect. Finally, because Joe's Jeans has not appeared in this case, a decision on the merits is unlikely. Id. at 13; Eitel, 782 F.2d at 1471–72.

In sum, Whitaker has met the requirements for a default judgment. See Eitel, 782 F.2d at 1471–72.

## D. Remedy

Whitaker seeks injunctive relief, damages, attorneys' fees and costs. The Court grants injunctive relief, $4,000 in damages, and $2,087.50 in attorneys' fees and costs.

### 1. Injunctive Relief

Because Whitaker can prevail on his ADA claim where, as here, the facts alleged in the complaint are taken as true, Whitaker's allegations entitle him to an injunction requiring Joe's Jeans to remedy the alleged architectural barrier he encountered at Joe's Store. See 42 U.S.C. § 12188(a)(2).

### 2. Statutory Damages

A plaintiff denied equal access to an establishment covered by the Unruh Act is entitled to no less than $4,000 in statutory damages. Cal. Civ. Code § 51(f). Thus, Whitaker is entitled to the $4,000 that he seeks for Joe's Jeans' singular violation of the Unruh Act.

### 3. Attorneys' Fees

Whitaker seeks $1,830 in attorneys' fees for work done by his legal counsel, Potter Handy LLP. Memo. of P. & A. at 14. The ADA and the Unruh Act both entitle Whitaker to attorneys' fees, subject to the Court's discretion. See 42 U.S.C. § 12205 (providing district courts with authority to award reasonable attorneys' fees to the prevailing party in an ADA action); Cal. Civ. Code § 52 (noting that attorneys' fees for Unruh Act violations may be determined by the court). Attorneys' fee awards must account for work of non-attorneys, including paralegals and law clerks "whose labor contributes to the work product for which an attorney bills her client." Missouri v. Jenkins, 491 U.S. 274, 285 (1989). These awards do not include fees for "purely clerical or secretarial tasks." Id. at 288 n.10. Courts calculate an attorneys' fee award using the lodestar method, where the "lodestar" amount is the sum of the number of hours reasonably expended on the matter multiplied by a reasonable hourly rate. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1146–48 (9th Cir. 2001). The party seeking attorneys' fees bears the burden of producing sufficient evidence that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

#### a. Hourly Rates

Whitaker seeks an hourly rate of $650 for attorney Mark Potter, $400 for attorney Faythe Gutierrez, $200 for legal assistant Marcus Handy, and $100 for legal assistants Andrew Sheaffer, Deepa Shetty, Geraldine Manalo, Alissa Sayson, and Shikhar Srivastava. Memo. of P. & A. at 19–20.

In support of the hourly rates requested for his attorneys—Mark Potter and Faythe

Gutierrez—Whitaker submits the declarations of attorney Russell Handy and fee experts Richard Pearl and John O'Connor, along with a 2018 rate report. Handy Decl. (Dkt. 12-3); Pearl Decl. (Dkt. 12-8); Rate Report (Dkt. 12-9); O'Connor Decl. (Dkt. 12-10). Multiple recent decisions in this district that considered identical declarations by the same attorney and fee experts in similar suits have found these declarations to be of limited value. See Love v. Undefeated Apparel Inc., No. C 20-00330 WHA, 2021 WL 1375911, at *5–6 (N.D. Cal. Apr. 12, 2021); Johnson v. Cortese, No. 5:19-cv-02671-EJD, 2020 WL 7495164, at *9 (N.D. Cal. Dec. 21, 2020) (noting that Richard Pearl and John O'Connor lack experience in ADA litigation and their declarations were prepared in connection with other, dissimilar cases). These same decisions found rates of $475 per hour for Mark Potter and $250 per hour for Faythe Gutierrez to be reasonable. See Undefeated Apparel Inc., 2021 WL 1375911, at *6; Cortese, 2020 WL 7495164, at *10.

Whitaker provides no rationale for the higher requested hourly rates here beyond the statement that two less recent and factually dissimilar decisions in this district—Love v. Rivendell II, Ltd., No. 3:18-cv-03907-JST (EDL) (N.D. Cal. April 18, 2019) and Johnson v. Khalsa Insurance Agency, Inc., No. 5:19-cv-02725-SBA (N.D. Cal. April 8, 2020)—awarded attorneys' fees at a rate of $650 per hour to attorney Mark Potter. Memo. of P. & A. at 24; see also Johnson v. In Suk Jun, No. 19-cv-06474-BLF, 2020 WL 6507995, at *9 (N.D. Cal. Nov. 5, 2020) (noting that Love v. Rivendell II, Ltd. was a complex class action matter and that the court awarded attorneys' fees in Johnson v. Khalsa Insurance Agency, Inc. without explicit reliance on any case law). Additionally, Whitaker provides no support for the requested $400 per hour rate for attorney Faythe Gutierrez. See Memo. of P. & A. at 24; Handy Decl. ¶ 4.

As for the paralegals and legal assistants, aside from a brief discussion of Marcus Handy's background, Whitaker provides no supporting evidence or prior decisions to warrant a $200 per hour rate for a legal assistant with twelve years of experience on disability litigation cases. See Handy Decl. ¶ 6. Whitaker also fails to provide information regarding the experience and qualifications of the various individuals listed on the invoice

as billing at a rate of $100 per hour, though the declaration of Russell Handy notes that Potter Handy LLP bills for work done by paralegals and legal assistants at a rate of $100 per hour. Id. ¶ 5. Although Whitaker only cites two cases from the Central District of California to support the $100 per hour billing rate for paralegals and legal assistants, courts in the Northern District of California have recently found an hourly rate of $100 reasonable for paralegals and legal assistants at Potter Handy LLP. Id.; see Johnson v. Shahkaramai, No. 5:20-cv-07263-BLF, 2021 WL 1530940, at *10 (N.D. Cal. Apr. 19, 2021).

Because Whitaker failed to provide supporting evidence for the higher sums he seeks, and in light of the numerous recent decisions of this district, the Court grants attorneys' fees at rates of $475 per hour for Mark Potter, $250 per hour for Faythe Gutierrez, and $100 per hour for Marcus Handy and all other paralegals and legal assistants—Andrew Sheaffer, Deepa Shetty, Geraldine Manalo, Alissa Sayson, and Shikhar Srivastava.

### b. Reasonable Hours

Whitaker submits an invoice for this suit that totals 5.9 hours of work billed. Potter Handy, LLP Invoice (Dkt. 12-3). The majority of time billed is reasonable, but the .3 hours spent by Alissa Sayson on "front matters" appears to be clerical. Id. Because clerical fees are not recoverable as attorneys' fees, the Court disallows the .3 hours of work done by Alissa Sayson. See Jenkins, 491 U.S. at 288 n.10.

Accordingly, with the adjusted hourly rates and hours, the attorneys' fees award totals $1,160, as shown below.

| Attorney/Paralegal | Total Time (hours) | Hourly Rate | Amount |
|---|---|---|---|
| M. Potter | .6 | $475 | $285 |
| F. Gutierrez | 2.5 | $250 | $625 |
| M. Handy | 1.6 | $100 | $160 |
| S. Srivastava | .1 | $100 | $10 |
| G. Manalo | .1 | $100 | $10 |

| | | | |
|---|---|---|---|
| D. Shetty | .2 | $100 | $20 |
| A. Sheaffer | .5 | $100 | $50 |
| **Total** | **5.6** | | **$1,160** |

### 4. Litigation Costs

Whitaker requests $927.50 in litigation expenses, which includes the cost of service, filing fees, and investigation fees. A court may, in its discretion, award litigation costs, including investigation fees, to the prevailing party in a discrimination action. 42 U.S.C. § 12205; see Johnson v. VN Alliance LLC, No. 18-cv-01372-BLF, 2019 WL 2515749, at *9 (N.D. Cal. June 18, 2019) (allowing investigator fees to be recovered as litigation expenses). Thus, the Court awards the requested $927.50 in litigation expenses to Whitaker.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion for Default Judgment, and awards injunctive relief, $4,000 in statutory damages, $1,160 in attorneys' fees, and $927.50 in litigation expenses and costs.

**IT IS SO ORDERED.**

Dated: June 24, 2021

CHARLES R. BREYER
United States District Judge